**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cr-00242-TWP-TAB |
| ) | |
| IRVING HERNANDEZ (01), ) | |
| ) | |
| Defendant. ) | |

**ENTRY DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Irving Hernandez's ("Defendant") Motion to Suppress ([Filing No. 93](#)). Defendant is charged by indictment with violating 21 U.S.C. § 846, conspiracy to distribute methamphetamine, and 21 U.S.C. § 841(a)(1), distribution of methamphetamine. Defendant asserts that the search and seizure of his bedroom and vehicle were made without valid consent, and therefore violated his Fourth Amendment rights, justifying suppression of the evidence found during the search. For the following reasons, Defendant's Motion to Suppress is **DENIED**.

**I. BACKGROUND**

During the evening of November 10, 2014, undercover law enforcement officers planned a controlled drug purchase involving a cooperating individual (the "CI") and an unknown supplier. They were to meet at a grocery store parking lot where the drug purchase would occur. As planned, the CI and unknown supplier met in the parking lot, and as the events unfolded, marked police vehicles converged on the scene. The unknown supplier fled from the scene in his vehicle, leading to a lengthy high-speed police chase. The unknown supplier eventually turned his vehicle onto a street with a dead end cul-de-sac. Law enforcement officers attempted to create a blockade with

their vehicles to trap the unknown supplier and his vehicle in the street. The unknown supplier turned his vehicle around and drove at high speed toward the police blockade to exit the street. As the unknown supplier approached, law enforcement officers discharged their firearms at the unknown supplier's vehicle in an attempt to stop the vehicle. However, the gunshots did not disable the vehicle, and the unknown supplier was able to maneuver around the blockade and escape. Through their investigation, law enforcement officers determined that Defendant Irving Hernandez was the unknown supplier who had just engaged in the high speed chase and been fired upon.

Officers also determined that the suspect, Irving Hernandez, was on parole. A condition of Defendant's Conditional Parole Release Agreement provides that he is "subject to reasonable search by [his] supervising officer or authorized official of the Department of Correction if the officer has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remain on parole." (Filing No. 109-1). Law enforcement officers requested the assistance of a Department of Correction ("DOC") officer to assist in the search of the home listed as Defendant's residence, however the parole officials declined because no officer was available. DOC officials gave the FBI verbal authority to conduct a search.

Later that evening, at approximately 11:00 p.m., FBI Special Agents Timothy Bates ("Bates") and Craig A. Tremaroli ("Tremaroli") (collectively, "FBI agents") went to Defendant's residence—a house that is owned by Defendant's father, Jose Hernandez—to investigate. Jose Hernandez answered the door, and Bates and Tremaroli identified themselves and explained why they were at the residence. They explained that Defendant was a suspect who they believed was involved in a drug deal earlier that evening, that Defendant had been involved in a high speed chase with police officers, his vehicle had been shot at, his whereabouts were unknown, and that

Defendant could be in danger.  Jose Hernandez told the FBI agents that Defendant was not at the residence.  He informed the FBI agents that Defendant lived there and usually stayed at the residence Monday through Friday and generally stayed at hotels or friends' houses on the weekend.  Jose Hernandez informed the FBI agents that Defendant did not pay rent or contribute any money for the residential bills.  The FBI agents requested Jose Hernandez's consent to search the residence to assist in their investigation.  Jose Hernandez consented to the search and signed a consent to search form.

Jose Hernandez led the FBI agents to the upper floor of the house and directed them to the bedroom used by Defendant.  The bedroom door was open, and there was no lock on the door.  Bates and Tremaroli searched the bedroom and found several tall stacks of shoeboxes in the corner of the bedroom.  They found and seized a digital scale with residue which was hidden inside one of the shoeboxes.

Jose Hernandez also informed the FBI agents that Defendant had a black Dodge Charger automobile that was parked inside the garage of the residence.  He informed them that the Charger was not drivable at that time and that he did not have keys to the vehicle.  The FBI agents went into the garage and used tools to gain access to the Charger.  They did not find anything relevant to their investigation inside the Charger.

At approximately 1:00 a.m. on November 11, 2014, the Defendant called Jose Hernandez on the telephone to tell him that he was not coming home that night and that something had happened but he did not want to talk about it over the telephone.  Agent Tremaroli overheard this conversation between Jose Hernandez and Defendant.

## II.  DISCUSSION

In his Motion to Suppress, Defendant asked the Court to suppress the evidence seized during the search of his bedroom and vehicle.  However, at the hearing on the Motion to Suppress, the Government stated that nothing was found during the search of the vehicle and the parties agreed that the portion of the Motion to Suppress regarding the search of the vehicle is moot.  Thus, this Order addresses only Defendant's request to suppress the evidence seized from his bedroom.

As an initial matter, the Government asserts that Defendant lacks standing to contest the search because he is on parole, and therefore does not have a reasonable expectation of privacy. The Government argues that DOC officials gave them permission to search the residence based on the Conditional Parole Release Agreement which provides that Defendant is "subject to reasonable search by [his] supervising officer or authorized official of the Department of Correction if the officer has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remain on parole." ([Filing No. 109-1](#)). Defendant argues that even if the DOC officials gave the FBI verbal authority to search the residence pursuant to his parole release agreement, such permission does not comport with the language of the Parole Agreement because the FBI agents are not authorized officials of the DOC. The Court is persuaded by Defendants argument and finds that Defendant has standing to contest the search.

Defendant argues that the FBI agents' search of his bedroom violated the Fourth Amendment.  There is no dispute that the FBI agents did not have a search warrant and they did not have Defendant's personal consent to search his bedroom.  Defendant asserts that the issue before the Court is whether the FBI agents had authority to conduct their search based on the third-party consent given by his father, Jose Hernandez. Defendant argued in his Motion to Suppress that Jose Hernandez did not have authority to consent to the search of Defendant's bedroom.

However, during the hearing, Defendant's counsel candidly conceded that Jose Hernandez likely did have authority to consent to the search of the bedroom.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment prohibits a warrantless search unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).

One such exception to the warrant requirement applies "to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Ill. v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). "[C]ommon authority rests on mutual use of the property by persons generally having joint access or control for most purposes . . . . The burden of establishing that common authority rests upon the [Government]." *Id.* (citation and quotation marks omitted).

Defendant argues that, as an adult child living in his parents' house, he should have a greater presumption of privacy in his bedroom than that of a minor child. He argues that, based on a greater privacy interest, Jose Hernandez did not have common authority to consent to the FBI agents' search of his bedroom. Therefore, the search was unreasonable, and the seized scale and any other evidence from the search should be suppressed. Defendant relies on *United States v. Whitfield*, 939 F.2d 1071 (D.C. Cir. 1991) for his argument that adult children living in a parent's house have a greater expectation of privacy in their bedroom. In *Whitfield*, the court explained

5

that, under the "mutual use" standard, the investigating agents cannot assume common authority solely on the third-party's ownership of the property. *Id.* at 1075.

Defendant also points to the Seventh Circuit opinion in *United States v. Ladell*, 127 F.3d 622 (7th Cir. 1997) to argue that his father did not have authority to give consent for the search of his bedroom. He explains that the court in *Ladell* did not suppress evidence because the case involved a domestic dispute, and police officers were called to the apartment by the mother, who then gave consent to search the entire apartment. Defendant contends that *Ladell* is distinguishable on the bases that police officers were not invited to Jose Hernandez's home, but rather, they showed up uninvited and asked to search the house, and *Ladell* involved a domestic dispute that presented an ongoing danger.

The Government responds that Jose Hernandez had apparent authority to consent to the search of Defendant's room and also relies on *Ladell*. The Seventh Circuit explained in *Ladell* that:

> When an apartment, for example, is shared, one ordinarily assumes the risk that a co-tenant might consent to a search, at least to all common areas and those areas to which the other has access. A third-party consent is also easier to sustain if the relationship between the parties--parent to child here, spouse to spouse in other cases--is especially close.

*Id.* at 624.

Jose Hernandez owned the house where Defendant resided. Defendant shared the residence with his parents. His parents had access to the entire house, including his bedroom. There was no lock on Defendant's bedroom door, and when Jose Hernandez led the FBI agents to the bedroom, the door was open, not closed. Additionally, Defendant did not help pay for the household bills or pay rent to his parents, which arguably could have provided a greater expectation of privacy. The relationship between Jose Hernandez and Defendant was "especially close"—a

6

father and son. Each of these facts supports the conclusion that Jose Hernandez had apparent authority to consent to the search of Defendant's room.

Like in *Ladell*, there is no evidence that Jose Hernandez was coerced into consenting to the search. Jose Hernandez signed a consent to search form, admitted as Government Exhibit S-2 during the evidentiary hearing, which explained, "I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of: 13743 Stanford Drive, Carmel, IN [the residence]." This consent concerned the "complete" house. Also similar to *Ladell*, the consenting parent was concerned for the safety of family members because of an ongoing dangerous situation. Jose Hernandez was concerned for the safety of the Defendant who allegedly had been involved in a drug deal earlier that evening, involved in a high speed chase with police officers, his vehicle had been shot at, his whereabouts were unknown to law enforcement officers, and Defendant could be in danger. Jose Hernandez had authority to give consent to the FBI agents to search the Defendant's bedroom. Thus, the search and seizure did not violate Defendant's rights under the Fourth Amendment.

### III.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Suppress (Filing No. 93).

**SO ORDERED.**

Date: 4/19/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth Lawrence Riggins
kennethriggins@yahoo.com

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov