UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:14-cr-00242-TWP-TAB-01 |
| IRVING HERNANDEZ, | ) ) ) |
| Defendant. | ) |

**ORDER DENYING EMERGENCY MOTION FOR COMPASSIONATE RELIEF**

On June 2, 2020, Defendant Irving Hernandez, an inmate at the Federal Correctional Institution, Milan ("FCI Milan"), filed an Emergency Motion for Compassionate Release to Home Detention pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 183.) Hernandez is seeking immediate release to home detention due to the health risks arising from the COVID-19 pandemic. For the reasons explained in this Order, the motion is **denied**.

## I. BACKGROUND

Hernandez is 31 years old. (Dkt. 152 at 3.) On January 26, 2017, Hernandez pled guilty one count of Conspiracy to Distribute 50 Grams of Methamphetamine, in violation of 21 §§ 841(a)(1), 846 and 851. (Dkt. 159.) The Court sentenced him to 131 months' imprisonment at the Bureau of Prisons ("BOP") followed by 8 years of supervised release. *Id.* Hernandez is currently incarcerated at FCI Milan. His projected release date is April 8, 2024.

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. (Dkt. 152.) During the sentencing hearing, Hernandez objected to paragraphs 15, 16, 17, 26, 30 and 31 of the PSR. Specifically, he objected to the Government filing an Information pursuant to 21 U.S.C. §851, and to the weight of the drug calculation, and those objections were overruled. (Dkt. 171 at

26-33.)  Hernandez had no other objections to the PSR as it related to his criminal history and conduct.  The PSR shows that Hernandez's adult criminal history began at the age of 18 when he was arrested and convicted of illegal consumption of alcohol.  *Id.* at 7.  At age 20, he was arrested and convicted of driving while suspended.  *Id.*  Also at age 20, he was arrested and convicted of felony dealing in cocaine.  *Id.* at 7.  He was sentenced to six years, with three years executed through community corrections and three years suspended with probation.  His probation was later revoked, and he was ordered to serve the remaining 545 days at the Indiana Department of Correction.  *Id.*  He was released to parole on April 30, 2014.

The PSR and factual basis for the plea of guilty (Dkt. 142) reflect that charges in this case arose while Hernandez was still on parole.  The evidence shows that Hernandez engaged in a conspiracy to distribute as much as 797.5 grams of Methamphetamine between July 4, 2014 and November 10, 2014.  (Dkt. 171 at 17-20.)  Following the arrest of a co-conspirator, Hernandez led law enforcement officers on a high-speed chase through Indianapolis, Indiana that ended in a cul-de-sac of a residential neighborhood.  *Id.*  Rather than surrender, Hernandez accelerated his vehicle toward law enforcement officers, causing one of the officers to fire five shots into his vehicle.  *Id.*  Hernandez escaped and was eventually arrested on November 12, 2014.  *Id.*

In Hernandez's Motion for compassionate release, his counsel offers a study by the Centers for Disease Control and Prevention ("CDC") identifying African-Americans and individuals with hypertension as two demographics with an increased risk of hospitalization or death as a result of COVID-19.[1]  Counsel asserts that "as an African-American man suffering from hypertension, [Hernandez] is at a great risk of serious illness or death from COVID-19." (Dkt. 183 at 14.)  However there is no documentation to support Hernandez's claims.  The PSR does not mention

---

[1] Dkt. 183, p. 14 (citing https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm).

hypertension and describes Hernandez as being in "good physical health."  (Dkt. 152 at 11.)  For the purposes of this Motion, the Court accepts as true Hernandez's contention that he is African-American because he is in the best position to identify his race.  The Court notes, however, that the PSR does not identify Hernandez as African-American.  *Id.* at 3.  In addition, the BOP's inmate locator website identifies Hernandez's race as white.  Regardless of whether Hernandez is Caucasian or African-American, the Court's result is the same.

Hernandez argues that his incarceration at FCI Milan, specifically, places him at an increased risk because "COVID-19 is out of control at FCI Milan . . . placing all of the inmates and staff at great risk."  (Dkt. 183 at 2.)  There are currently 8 reported cases (7 inmates, 1 staff) of COVID-19 at FCI Milan.  *See* https://www.bop.gov/coronavirus/ (last visited 06/20/2020).

## II.  DISCUSSION

Hernandez argues that the COVID-19 pandemic and other relevant circumstances, including his hypertension and the outbreak at FCI Milan, amount to extraordinary and compelling reasons for compassionate release.  (Dkt. 183 at 8, 14.)  He further argues that home detention will provide punishment that is "sufficient but not greater than necessary," that he has a transition plan to live and work with his family, and that he has made good use of his time during his incarceration, taking 14 educational courses and earning a GED.

In reply, the Government argues there are no extraordinary and compelling reasons for compassionate release because Hernandez has not demonstrated that he is at a greater risk of contracting or suffering serious complications from COVID-19 than other inmates. The Government argues that the nature of Hernandez's offense, his attempt to evade arrest by leading law enforcement officers on a high-speed chase, and his failure to successfully complete probation or parole establish that he would pose a danger to the community if he were released.  The

Government argues the evidence against Hernandez was strong, noting the case involved not only Hernandez's admissions, but the testimony of several of the Defendant's accomplices, an attempt to conduct a controlled purchase of methamphetamine from the Defendant, and the seizure of corroborating physical evidence. [2]

> 18 U.S.C. § 3582(c) provides in relevant part:
>
> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that

---

[2] The Government also argues that Mr. Hernandez has failed to exhaust his administrative remedies. Thirty days have passed since Mr. Hernandez filed his administrative request for release with the warden, and his administrative remedies are arguably exhausted. Regardless, the Court need not consider this issue because the Motion is denied on other grounds.

defendants (and not just the BOP) may move for compassionate release,[3] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the Defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

For the reasons explained in more detail below, the Court concludes that Hernandez has not demonstrated extraordinary and compelling circumstances justifying his release. Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and

---

[3] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018).

has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[4] *Id.*, Application Note 1(D).

Hernandez does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The COVID-19 pandemic is a serious public health crisis affecting every aspect of society. Hernandez has presented evidence that the circumstances of prison life place inmates generally at a greater risk of transmitting infectious diseases, including COVID-19, than the general population. (*See* Dkt. 183-4.) Nevertheless, most courts have concluded that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (same); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2

---

[4] The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, because Mr. Hernandez's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

(N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."); *see generally United States v. Clark*, No. 1:09cr336-1, 2020 WL 1874140 at *8 (M.D.N.C. Apr. 15, 2020).

Hernandez has not established that his individual circumstances place him at a greater risk of contracting or suffering serious complications from COVID-19 than the general prison population. At 31-years-old, Hernandez is not in an at-risk age group. The PSR indicates that he was in good physical health at the time of his conviction, less than four years ago, and there is no documentation that his condition has deteriorated since that time. Although FCI Milan has had at least 134 confirmed cases of COVID-19 since the start of the pandemic, the BOP estimates that there are currently eight positive cases at the facility. Given these circumstances, Hernandez has not established extraordinary and compelling reasons justifying his release, and his Motion for Compassionate Release is **denied**.

Given the Court's determination that Hernandez has not shown extraordinary and compelling reasons justify his release, and does not need to decide whether he poses a danger to the community or whether the § 3553(a) factors weigh in favor of his release.

### III.  CONCLUSION

For the reasons stated above, Hernandez's Emergency Motion for Compassionate Release, (Dkt. [183]), is **DENIED**.

**SO ORDERED**.

Date: 6/23/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard A. Jones
rajoneslaw08@aol.com

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov